Nelson et al. v. The People.

EVIDENCE—CRIMINAL LAW.

Upon the trial of a charge of larceny of live stock, the defendant sought to show that two of the animals found in his possession were his own, and that, in cutting them out from a herd on the range, other cattle ran out with them, and that he intended, as soon as the cattle quieted down, to cut out and leave the other animals. *Held*, evidence that the two cows bore his brand and were his property had a tendency to show the reasonableness of his explanation of how the other stock came into his possession, and was competent.

*Error to the District Court of Weld County.*

Mr. J. W. McCreery and Mr. C. D. Todd, for plaintiffs in error.

The Attorney General, for the People.

Mr. Justice Goddard delivered the opinion of the court.

The plaintiffs in error were convicted at the May term of the district court of Weld county for the larceny of live stock, upon two separate informations, one charging them with the larceny of a steer, the property of The Pawnee Cattle Company, and the other with the larceny of four cows and one steer, the property of The Brown & Iliff Cattle Company, on the 31st day of January, 1894. The proof relied on by the prosecution to show the identity and ownership of the cattle

were the brands of the respective owners, that of The Pawnee Cattle Company being an A T cross (AT+), and that of The Brown & Iliff Cattle Company being a combination of the letters L and F (__F). It was shown by the uncontradicted evidence that the plaintiffs in error were, on January 31, 1894, driving four cows and two steers in the vicinity of Cedar creek, Weld county, and while so engaged were arrested and taken in charge by the witnesses Abner Alexander, Charles T. Kramer and Lew Kramer, and the cattle turned loose. These witnesses testified that one of the steers was branded with the AT+, and the other steer with the four cows were branded with the __F brand. The plaintiffs in error testified that two of the cows, a red and a white one,. were the property of Shadowen and were branded with the tin cup brand, which belonged to him, and not with any other brand; that he had sold these cows to J. D. Webb, who was engaged in buying, selling and butchering cattle, and that Nelson, who was in the employ of Webb, was assisting Shadowen in driving them to his pasture; that in cutting out the two cows from a larger herd the other cattle ran out with them, and that they intended, as soon as they quieted down, to cut them out and leave them behind.

Three other witnesses, John Campbell, James T. Jefferson and Fred C. Ericson, testified that they were hunting antelope in the vicinity where this occurred, and that after the cattle were turned loose they examined them and that two of the cows were branded with the tin cup brand. After this evidence was introduced, the plaintiffs in error called as a witness Charles Holliday, and asked him the following question:

" Q. After Shadowen and Nelson were held up and taken to Greeley did you have any business transaction with Mrs. Shadowen in regard to cattle? A. Yes sir; she came along and asked me where I lived—(Objection made to any conversation between these parties; sustained.)

" Mr. McCreery: We want to trace these same cattle. Mrs. Shadowen employed him to hunt these cattle, and he did.

" Q. State whether or not Mrs. Shadowen employed you to hunt cattle on the range after January 31st, 1894.  A.  Yes sir, she did.   (Objected to as incompetent, immaterial and irrelevant and not a part of the *res gestæ*.)

" Court: I don't exactly understand what you want to prove.

" Mr. McCreery: We have proved by Jefferson that he saw these two cows on the day of the arrest, and that a few days afterwards—about eight days afterwards—he saw them again in the custody of Mr. Holliday here and he detailed what they did.   I simply want to follow these cows and show that they have been followed right around until they were restored to the possession of Mrs. Shadowen without objection from anybody, identifying the stock that is said to have been stolen.   (Objection sustained.)

" Mr. McCreery: I desire to show by this witness, Mr. Holliday, that he was employed to hunt on the range in Weld county, cattle belonging to Shadowen, and that he found the two particular cows identified by Mr. Jefferson and others, at a place upon the same range somewhat to the south of the place where these defendants were arrested ; that he took those cattle with other cattle to the Kramers who had an opportunity to inspect the cattle ; that Mr. Alexander was there and likewise had an opportunity to inspect the cattle, and he turned them over to Cochran who took them to his ranch in Weld county and kept them for some days and afterwards took them directly to the Shadowen ranch and turned them over to Mrs. Shadowen.   (Objected to ; objection sustained.)

" Q. Did you find a red and a white cow on the range with that brand on ?   (Objected to ; objection sustained.)"

D. A. Cochran was called as a witness for plaintiffs in error, and among other things testified :

" Shadowen owns the tin cup brand. * * * I saw some of them on the range in Weld county. * * * I saw them again on the range about Feb. 9th.

" Mr. McCreery : Now I want to here offer to show there

was a red and a white cow turned over to him bearing this tin cup brand, and that he returned them back to the Shadowen ranch. (Objected to; objection sustained.)"

Mrs. Belle Shadowen, wife of plaintiff in error Shadowen, testified that her husband owned 75 or 80 head of cattle; that on January 31st some seven head had escaped from the pasture; that six head were returned by Mr. Cochran. On motion this testimony was stricken out.

We have quoted thus fully from the testimony offered and excluded in order to better present the question of its materiality, and the merits of the contention of counsel for plaintiffs in error that its exclusion worked prejudicial error to them. We are not advised upon what ground the court below excluded this testimony. It is suggested by the attorney general that "the testimony seems to have been excluded not for the reason that such testimony is inadmissible as a defense to a charge of larceny, but because the testimony offered was incompetent."

We are not favored with any reason why this testimony was incompetent, nor can we perceive any. The ownership of the animals found in the possession of plaintiffs in error was the important and vital question before the jury, since, if Shadowen owned any of them, or honestly believed they were his, he committed no crime in taking such of them.

Upon the fact as to whether two of them were marked with his brand or not, the testimony theretofore introduced was conflicting. The testimony excluded was in corroboration of that already introduced in behalf of plaintiffs in error, and tended to show that two of the cows found in his possession, which he claimed bore his brand, were afterwards identified by such marks by Holliday and Cochran. The testimony was therefore competent, and if believed by the jury, sufficient to show that Shadowen was, as he claimed to be, the owner of those two animals, and would have had a tendency to show the reasonableness of his explanation as to how the other animals came into his possession.

We think, therefore, the ruling of the court below in

excluding this testimony, constituted prejudicial error and necessitates a reversal. It is unnecessary to notice the other errors complained of, except in so far as to say that the assignment predicated upon the misconduct of one of the jury, who it is alleged by signs and demonstrations communicated with persons interested in the prosecution while in the jury box, while not sufficient to constitute reversible error, at least shows conduct on the part of the juror that was reprehensible, and deepens the impression that we gather from reading this record, that the verdicts were not the result of a dispassionate and impartial consideration of the evidence.

For the reasons assigned the judgments will be reversed and the causes remanded for further proceedings.

*Reversed.*